I please the Court and Counsel Kerry Smith for the appellant, Plaintiff Christine Indergard. Mr. Smith. The case is a Americans with Disabilities Act case in which the court, District Court, granted summary judgment solely on the basis that Georgia-Pacific did not ask Ms. Indergard to participate in a medical examination. It's agreed that the ADA and state law prohibit medical examinations unless they're job-related and consistent with business necessity. The question in this case, the District Court said, well, whatever they did, there's a question of fact as to whether it was job-related and consistent with business necessity. But I'm going to decide, the Court said, that it was not a medical examination because it didn't look like a medical examination. There aren't many opinions on what is a medical examination. It's a very open area. But that's the central issue in this case, was it or was it not a medical exam. Right. All right. And that issue applies to both the State claim and the Federal claim, because the State claim is still there. It's identical. This was a medical examination. Well, now, there are seven factors, as I understand it, that are applied. There are seven factors, Your Honor, but the EEOC also says that you don't have to apply those factors if certain individual characteristics exist. And it's in Addendum 17. It says sometimes examinations of one factor may be sufficient. One of those factors where it says sometimes one factor may be sufficient is a range of motion test that measures muscle strength and motor function. If you look at the excerpts of record on what Ms. Starnes did, she said on the very first day, she did a range of motion. It's on Excerpts of Record 32. She did a range of motion. Bilateral extremity range of motion is within normal limits. She did manual muscle testing. And the EEOC has said several times, those items alone are sufficient. The EEOC has also said. Okay. Now, these were tests outside of the PCE. No, they were inside the functional capacity evaluation. Oh, this was part of the PCE. Yes. Yes. The functional capacity evaluation, the entire functional capacity evaluation is Excerpt of Record 39, I believe, to 41, something like that. But as I understand it, this is applied generally to a returning worker, this PCE exam. Is that do I have that correct? They do do that. That is, that was a testimony, that they typically do that to an employee who's been off for a period of time, no matter what the reason. Okay. So what is it with respect to this PCE that, in your view, makes it a medical exam? Well, they did manual muscle testing. They did a range of motion. The EEOC says you can do physical agility tests and then defines a physical agility test as something that measures an individual's ability to perform actual or simulated job duties. If you look through the FCE, the functional capacity evaluation that was done, most of that does not apply to Ms. Indergaard's job. This OT palpated her knee. That goes to if it's a medical exam, then whether it was reasonable and the like. But you're saying if it's totally unrelated to her job, that should weigh as to whether it's a medical exam in the first place? Well, what I'm saying is what defendant has argued is that it was a physical agility test. We can ask her to do job-related functions. They weren't job-related simulated job tasks. The walking on toes is not a simulated job task. The evaluation that PT made, I'm sorry, OT made of Ms. Indergaard's ability to walk on her heels. What kind of physical activity did the job entail as you see it? Well, the job descriptions are fairly accurate that are in there. Some lifting, some carrying. Walking was predominantly important. Standing was important. There's no heel-to-toe walking, standing on one leg. Pushing and pulling were important. The OT evaluated ability to lift from fore to waist, waist to shoulder, shoulders to overhead. The job descriptions described waist-to-waist lifting, which is from this spot on the table to this spot on the table. So they went far beyond that. What the OT did was evaluate a functional capacity of Ms. Indergaard. In fact, when she got all done, she said her functional capacity, Ms. Indergaard's functional capacity, is medium work. She didn't say Ms. Indergaard solely cannot do these two jobs. She said Ms. Indergaard's functional capacity is medium work. And the EEOC once again in its regulations in Addendum 17 says a functional Then they took this functional capacity evaluation, and you look at Supplemental Excerpt of Records, page 4, and that's Anne Fletch's declaration. She says in the last paragraph of that declaration, we then took the limitations we got from this FCE and told Ms. Indergaard she didn't qualify for any other open positions. So they used it as a functional capacity evaluation. And the EEOC said, well, if Ms. Indergaard doesn't qualify for any other open positions, what can she do? They didn't limit themselves to these two jobs that were at issue. And in doing so, they did things that were medical examinations. And the EEOC said, well, if Ms. Indergaard doesn't qualify for any other open positions,   And it seems to me that if the issue is medical exam, then we need to look at what how do we determine whether it is or is not a medical exam. And as I look at it, there are seven factors. There are seven factors, except right below the seven factors in the EEOC advice is sometimes one factor is enough. And our position is if you look at what Ms. Starnes did, she did manual muscle testing and range of motion. And the EEOC says that's enough to make it a medical exam. Well, it seems to me out of the seven factors, at least this is looking at it first blush, two of them might point toward medical, but the remaining five point against medical. Now, you may or may not agree with that analysis, but is it appropriate for us to look at this picture from that kind of a lens? It is appropriate to look at it from that picture if you don't take the first step, which is where the EEOC says sometimes one is enough. Physiological response to exercise, which they did do, is enough to make it a medical exam. Okay, so let's zero in on what are the ones that measure physiological response? They took her blood pressure and pulse before she got on the treadmill. And they also did it afterwards, Your Honor, on the second day. On both? I thought they only took the pulse at the end. It may have been the pulse, but the EEOC has said, again, that physiological is measuring heart rate or blood pressure, and by taking her pulse they're measuring her heart rate. Okay, so there was also a notation that she limped and that she, well, I forget what the other aspect was, but, oh, she demonstrated pain. Pain. Okay, does that, if, let's suppose in the lifting, she was asked to lift, and she could lift, but she exhibited pain while lifting. Now, pain is a physiological response, it seems. So, but they want to find out if she can do the job. So is it inappropriate for them to find out whether she can lift without pain, and if she can lift with some degree of pain, she can still do it, but not? I think this physiological aspect has some uncertainty to me. Our position would be that the questions they can ask are, can she do the job test? They can't evaluate the quality with which she does the job test or whether she has pain in doing the job test. Well, what if, just hypothetically, what if the job required frequent lifting? Somebody who is a librarian for, you know, we had a case earlier this week about one of the jobs was shelving books in a library. This is a Social Security case, but I'm just taking that as an example. Okay, so the person had to be able to, and was said to be able to, shelve, do this job, and yet her claimed disability, now we're on the other side where it's important for the claimant to have a disability, says, well, you know, she could put the books up there, but he couldn't stand very long, and he really couldn't raise his arms up without exhibiting pain. Let's suppose that was the situation. Are those physiological responses or just a way of testing whether the person can do the job as described? Doing the job does not say, nowhere in the job description, actually, does it say do the job without pain. It says do the job, and she demonstrates the ability to do the job. Even if it's painful for her to do it? Even if it's painful for her, because they cannot use the purpose of this provision, the ADA, is to prohibit them from excluding people who may have a disability. Because they can accommodate. They can accommodate them. So you can't say, gee, you have a little pain, you have a little problem doing it. It's can you or can't you. They didn't do that. And they looked at pain. They used it to evaluate other jobs. It was a functional capacity evaluation in every respect. And the EEOC says you can't do that. Is the question that whether it's a medical test or not, is that a question of law or a question of fact? I believe it's a question of fact, Your Honor. I believe, and that was the second basis for our appeal, was a jury could conclude easily that it was a medical examination. And that should be left to the jury. Thank you, counsel. Your time has expired. We'll hear from Mr. Seidman. Is that correct? Thank you, Judge O'Scanlan. May it please the Court, Scott Seidman for Georgia Pacific Corporation. What we have here is a case where the central issue, of course, is whether or not there was a forbidden medical exam given by the judge. What about Judge Goodwin's last question? Is it fact or law? Well, there could be situations, of course, where it was a question of fact. I mean, you could have a dispute over what occurred at the physical capacity exam. But there's no issue of fact as to what occurred at the exam here. So then it's a question of applying the EEOC factors. And that's a question of law, as a matter of law, as a legal question. Was this a forbidden medical examination, applying the factors that the EEOC has given for making that determination? And, of course, applying the limited case law that we have on the question of whether or not there was a medical exam. I think, you know, the one case we have here in the Ninth Circuit is the Yin case. Now, that case wasn't a case determining whether or not there was a medical exam because the Court in that instance assumed, let's assume this was a medical exam, we're nevertheless going to fine for the employer because there's no question that if it was a medical exam, it was consistent with business necessity and job related. Well, the district court here did go to that step and said if you get beyond medical exam, then you've at least got a triable issue. Right? Yes. Yes. So you need to win on medical exam in this case. We need to win on medical exam because it gets sent back. If you decide it's a medical exam, it gets sent back. And we have to try the question of whether or not it really was a business necessity. And that comes from the question of whether lifting capacity was properly evaluated. Whether it's a question of fact or law, what I'm looking at is the record and I was posing a hypothetical to your opposing counsel, but we see all the time these Social Security cases, for example, where the very kinds of things that are being litigated are based on treating physicians, examining physicians, and everything, there's so much in this PCE that I look at, that it sounds like we're looking at one of the reports, disputed reports between competing doctors' opinions, and they're all medical exams. For example, the PCE therapist, she took her medical history right at the beginning of the outset. She got information on medications that she took. She completed a pain scale on her injured leg and she palpated her knee. She did the range of motion test and hip rotation. She, on day two of the exam, asked to determine whether she was experiencing increased pain as a result of the testing on the first day. She demonstrated an increased antalgic gait, which I understand means limping, when carrying 50 pounds. Demonstrated decreased body mechanics with leg lift and floor lift. Complained of increased muscle soreness. Indergard complained of a lower extremity stiffness and awkwardness during kneeling exercise. Pain complaints. Difficulty in pain when performing the crawling exercise. All of these seem to be physiological responses to exercises that she's being put through and seems clear under the regulations and under all the factors that when you're looking at physiological responses, you're into the area of a medical exam. So how can this be anything but? Actually, or a matter of luck. Let's distinguish between what's being asked of the individual to do, which is the fact that there were observations made as to, for example, level of pain. I mean, that obviously can relate. As you pointed out, the person who's putting the books up on the shelf, if a job requires frequent putting of books on the shelf, and an individual cannot do that because at some point- Has pain in doing it. Has pain in doing it. And eventually gets- But if she is disabled in that respect, then it's not clear. And hers was a standing issue because of her kneeling. There are certainly accommodations that could be made under the ADA, and this seems to be what's going on here is a screening out of somebody based on a disability where the ability to perform the job as described is not clearly unable to do absent accommodation. And that's, I think, what the whole thrust of this restriction on medical exam is, isn't it? Yes. The thrust of the restriction is that, as stated in the in case and described as the what's forbidden, the court said that employers shall not require medical examinations of their employees for the purpose of determining whether such employee is an individual with a disability or as to the nature and severity of the disability unless it's job-related and business necessity. So what you're looking at preventing is you don't want employers to be doing exams that are designed to ferret out the existence of disabilities or severity of the disability. So as to disqualify the person from the job as distinguished from the physical agility test. The fact that there are observations made is something that goes into factoring into the question of whether this was a medical exam. But I think you have to look at the exam and the substance as a whole and what was done here. I just did. And I'm not hearing you tell me why this wasn't a medical exam. I'll tell you why. Why is this a physical agility exam? Because what you're doing is you're measuring whether the employee can perform the functions of the job, which require walking, which require gripping, which require pushing and pulling, which require lifting. And that is unquestionably what was done here. You go to the Columbia, goes out, they figure out what the job functions are, and then they put together simulated tasks that determine whether or not the employee can perform those job functions. Look at the conclusions Columbia reaches and they say, regardless of these observations, what does Columbia conclude and what does Columbia tell the Georgia Pacific? And what they say is, this individual can perform, demonstrate the ability to perform all the job tasks except for one. And the one job task the employee cannot perform is the lifting capacity. And the employee cannot perform the lifting capacity as defined. Now, as you identified, there's a dispute over whether the lifting capacity was properly identified. But what was said was she cannot lift over 50 pounds. So that was the one thing she was disqualified from. Okay. I think I understand what you're saying. We could look at this and if the totality of what they tested and the observations made, blood pressure, pulse, you're saying even if they took the blood pressure both before and after the treadmill, if they didn't wind up citing that as a, even if her blood pressure was elevated, if they didn't wind up citing that in the evaluation of why she couldn't perform, so it could be total medical tests, but the one aspect that they extracted from it, you're saying then it's not a medical test. Well, I would say it's not a forbidden medical test for purposes of this particular statute, which I grant you has not been much debated and much used. But, yes, as defined by this court in the end, what you're trying to prevent is somebody doing a medical exam whose purpose is to identify and then use for disqualifying purposes. What happened here, that's not what happened. Second, you know, you go to the issue of taking the blood pressure and the pulse. What happened here was her blood pressure was taken with a cuff, with a sphygmometer or whatever they're called. That was taken before any aspect of the test was done, was done for the purpose of being able to determine whether or not the individual was capable of doing the test in the first instance. And then during the course of the treadmill exam, there was an observation that her, you know, you hold on to the treadmill. I've done them. It's a stress test. Yeah, that's very different from your typical medical stress test where you have somebody who's hooked up to. So that's, I mean, that's not what was being done here. Wait, you just lost me. I've done these stress tests, okay? She had a cardio issue, right? No, she didn't have a heart problem. She didn't eat. So why were they doing the walking? Why did they care about blood pressure? She was doing it. Walking was a big part. She had to walk a lot for the job. Walking was a big part of the job. So they were testing. They have to set up a test that can reasonably test her ability to do walking. And so that's what they were doing. You have the observation. Heck, so you see that. You see the observation. Well, what if her pulse had gone from, you know, 70 up to 190 at the end? They did take her pulse before and after. Would that have led to a conclusion she couldn't perform the walking exam? Not that I'm aware. I mean, she passed the walking exam, not with standing. If a person being examined, I'm just trying to understand, they did take the pulse before and after. I understood they only took the pressure at the outset to see whether it was in some range that would indicate, as they like to say, subjecting her to the stress. But she gets on the treadmill, they accelerate it, and they do track the heart rate. And her heart rate goes into the red zone. If that had happened, then the conclusion would have been she wouldn't, presumably she couldn't perform the walking function, the walking part of the job. There might well be a conclusion. Just as with the person putting the books on the shelf, I suppose you could get to some point where you would draw a conclusion. All right. And he said if there's one aspect of the test which is, in fact, has a medical component, they didn't rely on it and she didn't flunk the test. But if she had, she would have been, based on this PCE, she would have been categorized as unable to perform a vital aspect of the job. Correct? She would have, if she could not do the walking function. Yes. If walking in the circumstances that were presented, let's suppose they didn't accelerate it so she was running, but she was doing, they were trying to simulate the constant walking on the job as described, and her pulse went up into a red zone. Then that would have been a... There is no indication in the test that the pulse rate would have disqualified her. I don't know why did they take the pulse then. I presume they took it because as a responsible party, they certainly would be concerned that the individual at some point indicated an inability to continue further with the test, just as taking the blood pressure and pulse at the beginning was a precaution to make sure that she was able to go forward with the test in the first instance. Obviously, I haven't had a chance. I've gone way over my time. I apologize. As I understand it, your position is that the pulse and maybe the preliminary BP reading were incidental to the physical fitness test and the pulse information and the BP information had nothing to do as a matter of record with respect to the findings in this case. Do I understand your position correctly? That's correct. It had absolutely nothing to do with the determinations as to the physical ability to do the job. All right. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: Goodwin, O'scannlain, Fisher